## LOST NOTE AFFIDAVIT

_Trevin Myers_, being of lawful age and being first duly sworn on oath, states and deposes as follows:

1.    I am a _Vice President and Asst. Secretary_ of the Administrative Services Division of Beneficial Maine Incorporated ("Lender"). I am over the age of eighteen years, and I am authorized to make this Affidavit on behalf of the Lender. If sworn as a witness I can competently testify to the matters stated herein. The statements set forth in this Affidavit are true and correct, to the best of my knowledge and belief.

2.    In the regular performance of my job functions, I have access to and am familiar with business records maintained by the Lender for the purpose of storing and maintaining documents related to the loans originated by or transferred to the Lender, including original promissory notes and/or loan agreements. The Lender maintains business records for the purpose of servicing mortgage loans. These records (which include data compilations, electronically imaged documents, and others) are: (a) made at or near the time of the occurrence of the matters set forth by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records; and (b) kept as a regular practice and in the ordinary course of business conducted by the Lender. It is the regular practice of the Lender to make such records. In connection with making this Affidavit, I reviewed and relied on those business records concerning the loan described below.

3.    I am making this Lost Note Affidavit in connection with a promissory note and/or loan agreement ("Note"), bearing the date of February 23, 2004, in which Stephanie M. Hall and


EXHIBIT B

Doug M. Hall promised to pay the Lender the sum of $202,104.65 (the "Loan"). The Loan is identified as Account Number xxxx xxxx ▮▮▮▮▮▮▮▮▮.

4. On or about the date on which this Affidavit was executed, a diligent search for the original Note was conducted. This search included looking in the physical files and secure storage facilities where the original Note and other documents related to Account ▮▮▮ are maintained.

5. After conducting the search described in paragraph 4 above, the original Note could not be located. Therefore, the Lender cannot reasonably obtain possession of the original Note because the whereabouts of the original Note cannot be determined, although the Lender was in possession of the original Note prior to its whereabouts becoming undeterminable.

6. An imaged copy of the original Note for the Loan is contained on the imaging system maintained by the Lender.

7. The records maintained by the Lender also establish that the Note was not paid, satisfied, pledged, transferred or lawfully seized.

/

/

/

/

/

RESTRICTED - 2

8. The imaged copy of the original Note for the Loan, is attached hereto as Exhibit 1, and contains the pertinent terms of the Note.

FURTHER AFFIANT SAYETH NOT.

By: _____
Signature of Affiant

TREVIN MYERS
Printed Name of Affiant

On behalf of Beneficial Maine Incorporated

Its: Vice President and Assistant Secretary
Administrative Services Division
Affiant's Title

STATE OF FLORIDA         )
                         ) ss.
COUNTY OF HILLSBOROUGH   )

Sworn to (or affirmed) and subscribed before me this __8__ day of __February 2013__, by __Trevin Myers__ (Name of Affiant), personally known to me to be the person who executed this Affidavit on behalf of the entity therein named.

WITNESS my hand and official seal

_____
(Signature of Notary Public)

SEAL OR STAMP

Benny L Campbell
(Print, type or stamp commission name of Notary Public)

BENNY L. CAMPBELL
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE098214
Expires 5/30/2015

My Commission Expires: 5/30/2015

RESTRICTED - 3

ME LNA (Owner)                                    24AUG11ver1.1

## LOAN REPAYMENT AND SECURITY AGREEMENT (Page 1 of 3)

**LENDER (called "We", "Us", "Our")**
BENEFICIAL MAINE INC.
254 WESTERN AVENUE
AUGUSTA ME 04330

**BORROWERS (called "You", "Your")**        **LOAN NO:**
HALL, STEPHANIE M A.K.A. STEPHANIE M BURBANK
HALL, DOUG M

24 ECHO VALLEY ESTATE
ROME ME 04957

| DATE OF LOAN | FIRST PAYMENT DUE DATE | OTHERS SAME DAY OF EACH MONTH | FINAL PAYMENT DUE DATE | | CONTRACT RATE (per year) |
|---|---|---|---|---|---|
| 02/23/2004 | 03/23/2004 | | 02/23/2024 | | 8.230 % |
| AMOUNT FINANCED | | PRINCIPAL | PROCEEDS AFTER INS. | | OFFICIAL FEES |
| 191,999.42 | | 202,104.65 | 191,999.42 | | 21.00 |
| | | DISCOUNT FEE/POINTS | | | |
| | | .00 | | | |
| LIFE INS PREMIUM | DISABILITY INS PREMIUM | IUI PREMIUM | | | |
| NONE | NONE | NONE | | | |
| | | | | | ORIGINATION FEE/POINTS |
| | | | | | 10,105.23 |
| FIRST INSTALLMENT | MONTHLY INSTALLMENT | | | | TERM PERIOD |
| 1,719.53 | 1,719.53 | | | | 240 |

YOU ARE GIVING US A SECURITY INTEREST IN THE REAL ESTATE LOCATED AT THE ABOVE ADDRESS.

**EXHIBIT A**

REQUIRED INSURANCE. You must obtain insurance for term of loan covering security for this loan as indicated by the word "YES" below, naming us as Loss Payee:
YES    Title insurance on real estate security.
YES    Hazard insurance on real estate security.

You may obtain any required insurance from anyone you choose and may assign any other policy of insurance you own to cover the security for this loan.
(See "Security" paragraph above for description of security to be insured.)

NOTICE: THE FOLLOWING PAGES CONTAIN ADDITIONAL CONTRACT TERMS.

## LOAN REPAYMENT AND SECURITY AGREEMENT (Page 2 of 3)

PAYMENT. In return for this loan you agree to pay us the Principal [Amount Financed plus Points (all shown on page one)] plus Interest in monthly payments as stated on page one, computed by the simple interest method on the unpaid balances of Principal at the Contract Rate (subject to any adjustment under the Adjustment to Contract Rate section below) plus any monthly insurance premium, if elected, until fully paid. The term Points means the sum of the Origination Fee (Points) and the Discount Fee (Points) shown on page one. You shall pay us monthly payments, at our business address or other address given you. If more than one Borrower is named on page one, we may enforce this Contract against all, or any Borrowers, but not in a combined amount greater than the amount owed. Payments are applied in the following order: late charges, interest at the Contract Rate for the actual time outstanding, principal, and insurance. For any past due amounts, payments will be applied to the most delinquent monthly installment first, in the same order shown above, until all past due monthly installments are paid in full. For late charge purposes, as long as you make a full monthly installment any month, no late charge will be assessed for that month.

DATE ON WHICH INTEREST BEGINS. If you do not cancel this loan within three business days according to your "Notice of Right to Rescind" then the date on which Interest begins, payment dates, and effective date of optional insurance purchased on page one are postponed by the number of days from this Agreement's date to date you receive this loan.

ADJUSTMENT TO CONTRACT RATE. The Contract Rate, as shown on page one, will decrease by one quarter of one percent (.25%) beginning with the thirteenth (13th) month after every twelve (12) consecutive month period where all payments were made in full within 30 days of their due date. Up to maximum of twelve (12) Contract Rate reductions are available during the term of the loan. For each Contract Rate reduction, the monthly installment payment will be reduced accordingly. Notwithstanding anything to the contrary in this paragraph, you will not receive any Contract Rate reductions or the reduced monthly payment after four periods of delinquency. A "period of delinquency" begins when you fail to make a payment in full within 30 days of the due date and ends when you have no payments that are outstanding for more than 30 days past their due date.

PAY-OUTS. You agree to pay-outs of Amount Financed as shown on Truth-In-Lending disclosure form. If pay-outs change because loan closing is delayed, (a) you shall pay additional amounts due at closing, or (b) your cash or check will be reduced to cover additional pay-outs.

PREPAYMENT. You may prepay any or all of your loan at any time. If you fully prepay before the final due date, the Points are fully earned when this loan is made, and you will not receive a refund of that part of the Finance Charge consisting of Points. If you fully prepay before the final due date, the amount you owe will be reduced by unearned credit insurance charges, if any.

LATE CHARGE. If you don't pay any payment in full within 15 days after it's due, you will also pay a late charge equal to 5% of the monthly payment, not exceeding $10.

BAD CHECK CHARGE. If you give us a check that is returned unpaid, you will pay a bad check charge in an amount equal to the fee charged by the financial institution returning the check.

LOANS WITH BALLOON FINAL INSTALLMENT. If the final installment on your loan requires a balloon payment, which is a payment not substantially equal to all other periodic payments or installments, you have certain rights under Maine law. We must notify you in writing of the maturity date and the amount due on that date at least 60 days but not more than 180 days prior to the maturity date of the loan. You will have the right to refinance the amount of the final balloon payment in order to fully amortize the remaining amount due on terms then generally offered by us, if you satisfy reasonable credit standards and if the property satisfies resonable loan to value standards.

SECURITY. You agree to give us a security interest in the real estate as described in the Mortgage/Deed of Trust.

PROPERTY INSURANCE:

A. YOUR OBLIGATION TO INSURE. You shall keep the structures located on the real property securing this loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is cancelled or expires while the loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below.

NOTICE: THE FOLLOWING PAGE CONTAINS ADDITIONAL CONTRACT TERMS.

## LOAN REPAYMENT AND SECURITY AGREEMENT (Page 3 of 3)

**B. LENDER'S RIGHT TO PLACE HAZARD INSURANCE.** You authorize us, at our option, to obtain coverage on the Property in an amount not greater than the outstanding balance of principal and interest on the loan or, if known to be less, the replacement value of the Property, in the event that you fail to maintain the required hazard insurance outlined above or fail to provide adequate proof of its existence. You authorize us to charge you for the costs of this insurance and add the insurance charges to your loan. The Insurance charges will be added to the unpaid balance of the loan which accrues interest at the Contract Rate. The addition of the insurance charges due might increase the amount of your final installment. The cost of Lender placed hazard insurance might be higher than the cost of standard insurance protecting the property. The Lender placed insurance will not insure the contents of the property or provide liability coverage. The insurance might not be the lowest cost coverage of its type available and you agree that we have no obligation to obtain the lowest cost coverage. We or an affiliated company might receive some benefit from the placement of this insurance and you will be charged for the full cost of the premium without reduction for any such benefit. If at any time after we have obtained this insurance, you provide adequate proof that you have subsequently purchased the required coverage, we will cancel the coverage we obtained and credit any unearned premiums to your loan.

**APPLICABLE LAW.** This loan is governed by the Maine Consumer Credit Code.

**FAILURE TO PAY.** If you don't pay on time or fail to keep the insurance required on page one in force, or are in default under the terms of your Mortgage, (1) we will notify you of your right to bring your account up to date, (2) if your account is not brought up to date within 14 days after receipt of the notice of your right to cure, we may sue you for the total amount you owe and (3) if your loan is secured by real estate, you will also pay our reasonable attorney fees. Not to exceed 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee.

**CREDIT REPORTING AND CUSTOMER INFORMATION PRACTICES.** If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. You agree that our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to you. You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by Applicable Law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents.

**ALTERNATIVE DISPUTE RESOLUTION AND OTHER RIDERS.** The terms of the Arbitration Agreement and any other Riders signed as part of this loan transaction are incorporated into this Agreement by reference. incorporated herein by reference.

**INSURANCE.** Optional credit insurance and any required insurance disclosures are attached to this Agreement and are **YOU HAVE RECEIVED A COMPLETE COPY OF THIS AGREEMENT AND THE TRUTH-IN-LENDING DISCLOSURES.**

**NOTICE TO CONSUMER:**   1. Do not sign this agreement before you read it.
   2. You are entitled to a copy of this agreement.

BORROWERS:

_Stephanie M Burbank_ (SEAL)
AKA _Stephanie M Hall_ (SEAL)
_Dory M. Hull_ (SEAL)

WITNESS:
_Elizabeth A. Miller_

## EXHIBIT A

A certain lot or parcel of land with the buildings thereon, situated in said Mechanic Falls, Androscoggin County and State of Maine, and bounded and described as follows:

Beginning at a point on Pleasant View Avenue, which point is the southeasterly corner of the intersection of Pleasant View Avenue with Williams Street and on the easterly side of Pleasant View Avenue; thence in a southerly direction and along the easterly side of Pleasant View Avenue seventy-five (75) feet on an iron pin; thence in a general easterly direction and at right angles with the first mentioned line and in a straight line one hundred and two (102) feet to an iron pin; thence in a general northerly direction and along the line of land now or formerly owned by Barbara Meserve seventy-six (76) feet to an iron pin located on the southerly side of Williams Street; thence in a general westerly direction and along the southerly side of Williams Street to the point of beginning

Also, hereby conveying all rights, easements, privileges, and appurtenances belonging to the premises hereinabove described.

For title reference, see Volume 1747, Page 327, Androscoggin County Registry of Deeds